E-FILED
Monday, 03 February, 2020  01:54:37 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| SHERRY L. CLEMONS and JANETTE SCOTT, on behalf of themselves and others similarly situated, | : : : : : | CIVIL ACTION FILE NO. 1:20-cv-1050 |
| Plaintiffs, | : : | **COMPLAINT – CLASS ACTION** |
| v. | : : : | **JURY TRIAL DEMANDED** |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY | : : : | |
| Defendant. | : : | |

Plaintiffs Sherry L. Clemons ("Plaintiff Clemons") and Janette Scott ("Plaintiff Scott") (hereinafter, collectively referred to as "Plaintiffs"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of counsel, and on information and belief, as follows:

## NATURE OF ACTION

1.      Plaintiffs bring this action for statutory damages, injunctive relief, and other legal and equitable remedies, resulting from the illegal actions of State Farm Mutual Automobile Insurance Company (hereinafter referred to as "State Farm" ) in negligently, knowingly, and/or willfully contacting Plaintiffs and Class Members on their cellular telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (hereinafter referred to as the "TCPA").   Defendant has violated the TCPA by contacting Plaintiffs and Class Members on their cellular telephones for non-emergency purposes via an

"automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), without their prior express consent within the meaning of the TCPA.

2.      This Class Action Complaint also relates to State Farm's conduct of making telemarketing calls through third parties in the absence of an adequate "do not call" policy or training. Because telemarketing campaigns generally place calls to hundreds, thousands, or even millions of potential customers *en masse*, Plaintiffs bring this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant, in violation of 47 U.S.C. §227(c) and 47 CFR 64.1200(d).

3.      Finally, some of the calls at issue in the case were made to some individuals despite their presence on the National Do Not Call Registry.  Thus, Plaintiff Clemons brings claims against Defendant for violations of 47 U.S.C. §227(c) and 47 CFR 64.1200(c).

## PARTIES

4.      Plaintiff Sherry L. Clemons is, and at all times mentioned herein was, an individual citizen of Missouri.

5.      Plaintiff Janette Scott is, and at all times mentioned herein was, an individual citizen of Missouri.

6.      State Farm is the parent company of a series of interrelated insurance and financial services companies.  State Farm is a Delaware corporation with corporate headquarters in Bloomington, Illinois.

## JURISDICTION AND VENUE

7.      The Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA") codified as 28 U.S.C. 1332(d)(2).  The matter in

controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA.  Further, Plaintiffs allege national classes, which will result in at least one Class member from a different state.

8.      This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

9.      This Court has personal jurisdiction over State Farm because the company has its headquarters and principal place of business in the State of Illinois.

10.     Venue is proper in the United States District Court for the Central District of Illinois because defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced, and because State Farm is headquartered in the Central District of Illinois.

## TCPA Background

11.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]"  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

12.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service."  *See* 47 U.S.C. § 227(b)(1)(A)(iii).

13.     No person or entity . . . may [i]nitiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing,or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12).

14.     "[P]rior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

15.     On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number are permitted only if the calls are made with the "prior express consent" of the called party. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("*FCC Declaratory Ruling*"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

16.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of … section 227(b) … that are committed by third-party telemarketers." *In the Matter of The Joint Petition Filed by DISH Network, LLC, the United States of America, and the States of California, Illinois, North Carolina, and Ohio for Declaratory Ruling Concerning the Telephone Consumer Protection Act*

4

*(TCPA) Rules, et al.*, CG Docket No. 11-50, 28 F.C.C.R. 6574, 6574 (¶ 1) (May 9, 2013) ("May 2013 FCC Ruling").

17.     More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.  28 F.C.C.R. at 6586 (¶ 34).

18.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.

28 F.C.C.R. at 6592 (¶ 46).

19.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships … through discovery, if they are not independently privy to such information. " *Id.* at 6592-93 (¶ 46).  Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

<u>The TCPA's Requirement That Entities Have Sufficient Policies</u>
<u>In Place Prior to Making Telemarketing Calls</u>

20.     The TCPA specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

21.     The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific 'do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

22.     Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

23.     These regulations are codified at 47 CFR 64.1200(d)(1)-(7).

24.     Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 CFR § 64.1200(d)(1, 2, 3, 6).

25.     This includes the requirement that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity can be contacted."  47 C.F.R. 64.1200(d)(4).

6

26.     These policies and procedures prohibit a company from making telemarketing calls unless they have implemented these policies and procedures. 47 CFR 64.1200(d).

27.     Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

The National Do Not Call Registry

28.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

29.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

30.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

The Rise of Automated Calling and Complaints Associated with Them

31.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

32.     "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer

Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

33.    In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

34.    *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

35.    Even more recently, a technology provider combating robocalls warned that nearly half of all calls to cell phones next year will be fraudulent. Press Release, First Orion, *Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls by 2019*, https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html

## FACTUAL ALLEGATIONS

**Plaintiff Clemons**

36.     Plaintiff Clemons is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

37.     Plaintiff Clemons has had her cell phone number, (314) XXX-8140, registered with the National Do Not Call List since 2005.

38.     On or about June 2019, Plaintiff received a telephone call to her cell phone, (314) XXX-8140 from telephone number (314) 300-9100.  Plaintiff picked up the call and heard a long period of "dead air" before hearing the voice of a live operator.

39.      On information and belief, the long pause at the beginning of a call is indicative of a call being placed using an automated dialer being used in "predictive dialing mode."  The pause represents the period of time during which the system detects that the recipient has picked up the call and redirects the call to a live operator.

40.     Once the call was connected to a live operator, an individual informed Plaintiff that State Farm has low insurance rates in her area and attempted to solicit her to switch her insurance carrier to State Farm.

41.     Plaintiff was listed on a policy provided by State Farm, purchased and maintained by her husband, seven years ago.  Plaintiff has had no contact with State Farm since, nor has she asked to be solicited by State Farm.

42.     At the end of that call, Plaintiff asked to receive no additional calls from State Farm.

43.     On information and belief, the (314) 300-9100 number is associated with Bradford O'Neal, a State Farm Agent in Creve Coeur, Missouri.

44.     Plaintiff has received numerous calls from (314) 300-9100 since receiving the first call, at a rate of approximately once per month.  At the end of every call answered, Plaintiff asked to not receive any other calls from the number.  To date, these requests have not been honored.

45.     In fact, the calls were so incessant that the Plaintiff blocked the telephone number, (314) 300-9100.

**Plaintiff Scott**

46.     Plaintiff Scott is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

47.     On or about March 2019, Plaintiff received a telephone call to her cell phone, (314) XXX-2208 from telephone number (314) 843-7722.  Plaintiff picked up the call and heard a long period of "dead air" before hearing the voice of a live operator.

48.     On information and belief, the long pause at the beginning of a call is indicative of a call being placed using an automated dialer being used in "predictive dialing mode."  The pause represents the period of time during which the system detects that the recipient has picked up the call and redirects the call to a live operator.

49.     Once the call was connected to a live operator, an individual informed Plaintiff that State Farm has low insurance rates in her area and attempted to solicit her to switch her insurance carrier to State Farm.

50.     Plaintiff has no prior dealings with State Farm, nor asked to be solicited by State Farm.

51.     On information and belief, the (314) 843-7722 number is associated with Scott Clayton, a State Farm Agent in St. Louis, Missouri.[1]

52.     During the period of March and April 2019, Plaintiff has received at least three calls from the same telephone number, delivering the same message.  On at least two occasions, Plaintiff requested that she not receive any more call from this number or from State Farm.

53.     Plaintiff received at least one call after requesting to be put on a Do Not Call List.

**Defendant State Farm and their Agents**

54.     Defendant State Farm is a "person" as the term is defined by 47 U.S.C. § 153(39).

55.     The purpose of State Farm agents is to serve State Farm by soliciting applications for insurance from consumers on behalf of State Farm.

56.     In furtherance of that goal, State Farm agents were, and are, authorized to perform telemarketing.

57.     State Farm maintains interim control over its agents' actions, both as to telemarketing and other activities.

58.     For example, State Farm directs the content of its agents' advertising. All advertising that directly or indirectly identifies State Farm, such as call scripts, must be approved prior to use by its agents.

59.     Similarly, State Farm sometimes even helps pay for its agents advertising, but retains absolute and unilateral control over how this happens.

---

[1] https://www.statefarm.com/agent/us/mo/saint-louis/scott-clayton-2q3ns82xwgf

60.     State Farm also issues to its agents manuals, forms, records, computer and electronic files, equipment and other materials, supplies and services, which agents are expected and directed to use and follow.

61.     However, although State Farm requires use of these materials and information, it maintains strict control over the information's use and dissemination. State Farm even retains ownership of these materials.

62.     State Farm directs the geographical area that its agents may take credit and earns fees for.

63.     Indeed, State Farm specifically retains the right to place whatever limitations it pleases upon what applications for insurance its agents are permitted to submit to State Farm.

64.     At all relevant times, State Farm had the interim right to instruct its agents not to submit applications for insurance that were obtained through telemarketing.

65.     The calls received by Plaintiffs utilized State Farm's "trade name, trademark and service mark[s]," as discussed in the May 2013 FCC Ruling.  As such, the telemarketer or telemarketers is an apparent or actual agent of State Farm.

66.     State Farm cloaked its agents with apparent authority to enter into advertising arrangements on its behalf, including lead generation telemarketing through Variable.

67.     State Farm filed a formal petition with the Federal Communications Commission in 2005 on behalf of its agents, asking for a declaratory ruling under the TCPA.

68.     The petition asked that the Commission issue a ruling that State Farm could "graft" its Existing Business Relationship exemption to the National Do Not Call Registry

prohibitions, so as to permit its agents to make telemarketing calls, just like State Farm could. State Farm's petition was granted.

69.     The significance of the petition, and the ruling, was that State Farm placed the public on notice that its agents would be making calls on its behalf, and that State Farm agents would be treated under the TCPA just as if State Farm itself would be if it were making the calls itself.

70.     In other words, State Farm cloaked its agents in apparent authority specifically as to legal relations between its agents and the public, pursuant to the TCPA.

71.     The telephone number that the telemarketer or telemarketers, acting on behalf of State Farm, called Plaintiffs with an "automatic telephone dialing system," was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

72.     Plaintiffs did not provide their "prior express consent" allowing the telemarketer, telemarketers, or State Farm to place telephone calls to Plaintiffs' cellular phone utilizing an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

73.     The telemarketer or telemarketers, acting on behalf of State Farm, did not make telephone calls to Plaintiffs' cellular phones "for emergency purposes" utilizing an "artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A).

74.     The telemarketer or telemarketers, acting on behalf of State Farm, did not employ an "automatic telephone dialing system," to make telephone calls to Plaintiffs' cellular phones "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

75.     The calls made by the telemarketer or telemarketers, acting on behalf of State Farm, to Plaintiffs' cellular phones placed by an "automatic telephone dialing system" for non-emergency purposes and in the absence of Plaintiffs' prior express consent, violated 47 U.S.C. § 227(b)(1)(A).

76.     Under the TCPA, the burden is on State Farm to demonstrate that Plaintiffs and class members provided prior express consent within the meaning of the statute.

77.     State Farm acted willfully, knowingly, and without regard to the TCPA when it initiated the calls described above.

78.     The telemarketer or telemarketers, acting on behalf of State Farm, made calls without having or properly maintaining an Internal Do Not Call list, as demonstrated by the fact that requests made by the named Plaintiffs for calls to stop were not heeded.

79.     The telemarketer or telemarketers, acting on behalf of State Farm, made calls without regard to whether the numbers contracted were on the Do Not Call list, as demonstrated by the fact that Plaintiff Clemons received calls.

80.     Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls and their privacy was improperly invaded. Moreover, these calls injured Plaintiffs and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiffs and the class.

## CLASS ACTION ALLEGATIONS

81.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully stated herein.

82.     Plaintiffs bring this action on behalf of themselves and the following classes (the

"Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

83.     Plaintiffs propose the following Class definitions, subject to amendment as

appropriate:

<u>**Autodialer Class:**</u> All persons in the United States who, within four years prior to the commencement of this litigation until the class is certified, received one or more calls made with an automated telephone dialing system on their cellular telephone from or on behalf of State Farm.

<u>**Internal Do Not Call Class:**</u> All persons in the United States who from four years prior to the filing of this action until the class is certified: (1) Defendant (or an agent acting on behalf of Defendant) called (2) with two or more telemarketing calls in a 12-month period.

<u>**National Do Not Call Class:**</u> All persons in the United States who, from four years prior to the filing of this action: (1) Defendant (or an agent acting on behalf of Defendant) made (2) two or more telemarketing calls (3) promoting Defendant's products or services; (4) to a residential phone number that was listed on the National Do Not Call Registry for at least 30 days before the first call; and (5) within any twelve-month period.

84.     Plaintiff Scott is a member of, and will fairly and adequately represent and protect

the interests of, the Autodialer and Internal Do Not Call Classes.  Plaintiff Clemons is a member

of, and will fairly and adequately represent and protect the interests of, the Autodialer, Internal

Do Not Call, and National Do Not Call Classes.  Neither Plaintiff has any interests that conflict

with any of the class members.

85.     Excluded from the Classes are counsel, the Defendant, and any entities in which

the Defendant has a controlling interest, the Defendant's agents and employees, any judge to

whom this action is assigned, and any member of such judge's staff and immediate family.

86.     Plaintiffs and all members of the Classes have been harmed by the acts of the

Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time,

the use of their cell phone battery, and the intrusion on their cellular telephone that occupied it from receiving legitimate communications.

87.     This Class Action Complaint seeks injunctive relief and money damages.

88.     The Classes as defined above is identifiable through the Defendant's dialer records, other phone records, and phone number databases.

89.     Plaintiffs do not know the exact number of members in the Class, but Plaintiffs reasonably believe Class members number, at minimum, in the thousands.

90.     The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

91.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

92.     There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

93.     There are numerous questions of law and fact common to Plaintiffs and to the proposed Classes, including but not limited to the following:

(a) whether Defendant utilized an automatic telephone dialing system to send calls to the members of the Autodialer Class;

(b) whether Defendant made calls to Plaintiffs and members of the Classes without first obtaining prior express written consent to make the calls;

(c) whether Defendant maintained a written "do not call" policy;

(d) whether Defendant maintained a "do not call" list;

(e) whether Defendant trained its employees or agents engaged in telemarketing on the existence and usage of any "do not call" policy;

16

(f)  whether Defendant recorded or honored "do not call" requests;

(g)  whether Defendant systematically made multiple telephone calls to Plaintiff Clemons and members of the National Do Not Call Registry class

(h)  whether Defendant's conduct constitutes a violation of the TCPA; and

(i)  whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

94.  As persons who received non-emergency telephone calls made using an automated telephone dialing system without their prior express consent within the meaning of the TCPA, Plaintiffs assert claims that are typical of each member of the Autodialer Class who also received such phone calls.

95.  As persons who two or more telemarketing calls in a twelve month period, Plaintiffs assert claims that are typical of each member of the INDC Class who also received such phone calls.

96.  As a person who two or more telemarketing calls in a twelve month period, to a telephone number that is registered on the National Do Not Call List, Plaintiff Clemons asserts claims that are typical of each member of the National NDC Class who also received such phone calls

97.  Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes and have the financial resources to do so.

98.  Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient

adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

99.     The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

100.    Plaintiffs are not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**FIRST CAUSE OF ACTION**
**Statutory Violations of the Telephone Consumer Protection Act**
**(47 U.S.C. 227, et seq.)**
**on behalf of the Autodialer Class**

101.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

102.    State Farm violated the TCPA by sending, or causing to be sent via an agent, calls using made using an automated telephone dialing system to the cellular telephones of Plaintiffs and members of the Class without their prior express written consent.

103.    As a result of the Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

104.    Insofar as Defendant engaged in willful and/or knowing violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and each member of the Class is entitled to treble damages of $1,500 for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)

105.    Plaintiffs and Class members are also entitled to and do seek injunctive relief prohibiting the Defendant from advertising their goods or services, by calling cellular telephone numbers except for emergency purposes, using a pre-recorded voice in the future.

### SECOND CAUSE OF ACTION
**Statutory Violations of the Telephone Consumer Protection Act**
**(47 U.S.C. 227, et seq.)**
**on behalf of the IDNC Class**

106.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

107.     Defendant placed numerous calls for telemarketing purposes to Plaintiffs' and IDNC Class Members' telephone numbers.

108.     Defendant did so despite not having a written policy pertaining to "do not call" requests.

109.     Defendant did so despite not having such a policy available "upon demand."

110.     Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list.

111.     Defendant did so despite not recording or honoring "do not call" requests.

112.     Defendant placed two or more telephone calls to Plaintiffs and IDNC Class Members in a 12-month period.

113.     As a result of the Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and IDNC Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(c)(5).

114.     In addition, insofar as the Court finds that Defendant engaged in willful and/or knowing violations, Plaintiffs and IDNC Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call, pursuant to 47 U.S.C. § 227(c)(5).

### THIRD CAUSE OF ACTION
**Statutory Violations of the Telephone Consumer Protection Act**
**(47 U.S.C. 227, et seq.)**
**on behalf of the National DNC Class**

115.     Plaintiff Clemons incorporates by reference the foregoing allegations as if fully set forth herein.

116.     The Defendant violated the TCPA by (a) initiating telephone solicitations to persons and entities whose telephone numbers were listed on the Do Not Call Registry, or (b) by the fact that others made those calls on its behalf.  *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

117.     The Defendant's violations were negligent and/or knowing.

118.     As a result of the Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff Clemons and National DNC Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(c)(5).

119.     In addition, insofar as the Court finds that Defendant engaged in willful and/or knowing violations, Plaintiff and National DNC Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call, pursuant to 47 U.S.C. § 227(c)(5).

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, pray for the following relief:

A.     Injunctive relief prohibiting Defendant from advertising its goods or services by calling cellular telephone numbers except for emergency purposes, using an automated telephone dialing system, in the future.

B.      As a result of the Defendant's willful and/or knowing violations of 47 U.S.C.
§ 227(b)(1), Plaintiffs seek for themselves and each Class $1,500 for each and every violation of
the TCPA;

C.      As a result of Defendant's statutory violations of 47 U.S.C. § 227(b)(1), Plaintiffs
seeks for themselves and each Class member $500 in statutory damages for each and every
violation of the TCPA;

D.      As a result of the Defendant's willful and/or knowing violations of 47 U.S.C.
§ 227(c) and 47 C.F.R. 64.1200(d), Plaintiffs seek for themselves and each Class member treble
damages, as provided by statute, of $1,500 for each and every violation of the TCPA;

E.      As a result of Defendant's statutory violations of 47 U.S.C. § 227(c) and 47
C.F.R. 64.1200(d), Plaintiffs seek for themselves and each Class member $500 in statutory
damages for each and every violation of the TCPA;

F.      As a result of the Defendant's willful and/or knowing violations of 47 U.S.C.
§ 227(c) and 47 C.F.R. 64.1200(c), Plaintiffs seek for themselves and each Class member treble
damages, as provided by statute, of $1,500 for each and every violation of the TCPA;

G.      As a result of Defendant's statutory violations of 47 U.S.C. § 227(c) and 47
C.F.R. 64.1200(d), Plaintiffs seek for themselves and each Class member $500 in statutory
damages for each and every violation of the TCPA;

H.      An award of attorneys' fees and costs to counsel for Plaintiffs and the Class as
permitted by law or in equity;

I.      An order certifying this action to be a proper class action pursuant to Federal Rule
of Civil Procedure 23, establishing appropriate Classes as the Court deems appropriate, finding

that Plaintiffs are proper representatives of the Classes, and appointing the lawyers and law firms

representing Plaintiff as counsel for the Classes;

     J.       Such other relief as the Court deems just and proper.

## **JURY DEMAND**

     Plaintiffs request a jury trial as to all claims of the complaint so triable.

Dated: February 3, 2020

PLAINTIFFS, on behalf of themselves
and others similarly situated,

By:  /s/ Michael J. Boyle, Jr.

Michael J. Boyle, Jr. (admitted to the Bar of the C.D.Ill.)
Email:  mboyle@meyerwilson.com
Matthew R. Wilson (admitted to the Bar of the C.D.Ill.)
Email:  mwilson@meyerwilson.com
MEYER WILSON CO., LPA
1320 Dublin Road, Suite 100
Columbus, OH 43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

Anthony Paronich (*pro hac vice* to be filed)
Email:  anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:  (508) 318-8100

*Attorneys for Plaintiffs and the Proposed Classes*